**Fred IAFRATE, Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner, Social Security Administration, Defendant.**

**No. CIV.A. 01–561S.**

United States District Court, D. Rhode Island.

April 18, 2003.

---

Donna M. Nesselbush, Marasco & Nesselbush, Providence, RI, for Plaintiff.

Michael P. Iannotti, Assistant U.S. Attorney, Providence, RI, for Defendant.

### DECISION AND ORDER

SMITH, District Judge.

*Introduction*

This matter is before the Court on Plaintiff Fred Iafrate's ("Iafrate" or "Plaintiff") Objection to a Report and Recommendation issued by Magistrate Judge Martin, which upheld the Commissioner of the Social Security Administration's ("Commissioner") decision to deny Iafrate disability insurance benefits ("DIB"). On March 17, 2003, this Court heard oral argument on the Plaintiff's Objection. After hearing those arguments, as well as reviewing the parties' pre-hearing and post-hearing briefs, this Court adopts and incorporates the detailed facts and procedural history set forth by Magistrate Judge Martin in the Report and Recommendation. While this writer agrees with the vast majority of the Magistrate Judge's analysis and conclusions as well, for the reasons that follow this Court declines to adopt the conclusion set forth in the Report and Recommendation, reverses the decision of the Administrative Law Judge ("ALJ") and remands the matter for further proceedings consistent with this Decision.

*Standard of Review*

■■■ Determinations made by magistrate judges on dispositive pretrial motions are reviewed *de novo* by the district court. *See* Fed.R.Civ.P. 72(b). In making a *de novo* determination, the district court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.* In reviewing a magistrate judge's recommendations, the district court must actually review and weigh the evidence presented to the mag-

istrate judge, and not merely rely on the magistrate judge's report and recommendation. *See United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Gioiosa v. United States,* 684 F.2d 176, 178 (1st Cir.1982).

With that role in mind, it is critical to remember that this Court must review appeals from decisions of the Commissioner based on a "substantial evidence" standard. An administrative agency's factual determinations are supported by substantial evidence if they are supported by proof that a reasonable mind might find adequate, in light of the record as a whole, to support a particular conclusion, even though the evidence might also support another inconsistent conclusion. *S. Shore Hosp., Inc. v. Thompson,* 308 F.3d 91, 104 (1st Cir.2002). In deciding whether substantial evidence exists, "conflicts and contradictions in the evidence are to be resolved by the [agency], not the court." *Sitar v. Schweiker,* 671 F.2d 19, 22 (1st Cir.1982) (citing *Rodriguez v. Sec'y of Health and Human Servs.,* 647 F.2d 218, 222 (1st Cir.1981)).

*Analysis*

A. *The Hypothetical Question*

Among other requirements not at issue here, a plaintiff must be disabled as defined by the Social Security Act (the "Act") in order to receive DIB. 42 U.S.C. § 423(a) (2000). Under the Act, an individual is deemed to be disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). The impairment must be so severe that the individual is unable to perform his previous work or any other kind of substantial, gainful employment that exists in the national economy. *See* 42 U.S.C. § 423(d)(2).

As the magistrate judge's report and recommendation correctly stated, an ALJ must undergo a five-step analysis in order to determine if a plaintiff is entitled to receive DIB. *See* 20 C.F.R. § 404.1520 (2002); *Seavey v. Barnhart,* 276 F.3d 1, 5 (1st Cir.2001). First, Plaintiff cannot be engaged in any substantial gainful activity. *See* 20 C.F.R. § 404.1520(a),(b). Second, Plaintiff must have a severe physical or mental impairment which significantly limits his ability to do "basic work activities." 20 C.F.R. § 404.1520(c). Third, Plaintiff's impairment must meet or equal one enumerated in the Listing of Impairments (the "Listing"). *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. Fourth, if the impairment falls outside the Listing, Plaintiff must prove that his residual functional capacity ("RFC") is insufficient to perform past relevant work. *See* 20 C.F.R. § 404.1520(e). Finally, fifth, the ALJ must determine whether suitable alternative employment that the individual can perform is available. *See* 20 C.F.R. § 404.1520(f). At this step in the analysis, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the plaintiff can perform. *See Heggarty v. Sullivan,* 947 F.2d 990, 995 (1st Cir.1991).

The ALJ determined that the Plaintiff was unable to return to his previous job because he lacked the requisite RFC. Record at 21, 22, 35. Nevertheless, the ALJ determined that the Plaintiff was not disabled under the Act, because he would be able to perform a significant number of other jobs that were available in the regional and national economy. Record at 21–23. The Plaintiff disagrees with this finding arguing that the ALJ relied upon

an inaccurate hypothetical question posed to the vocational expert ("VE") as the basis for this conclusion.

Iafrate's claimed medical disability primarily stems from his difficulty breathing around pulmonary irritants as a result of his chronic obstructive pulmonary disease and asthma-related symptoms. At the administrative hearing, the ALJ posed the following hypothetical question to the VE:

> I'd like you to consider a ... hypothetical claimant of the same age, education and work experience as this claimant with a residual functional capacity for sedentary work limited by *an inability to work in the presence of concentrated levels of dust, smoke and gasses or other air borne pulmonary irritants ....*

Record at 61 (emphasis added). The VE testified that while Iafrate could no longer perform the duties of his former employment, the Plaintiff would be able to perform the demands of "tens of thousands" of other jobs. Record at 63. As a result of the "tens of thousands" of jobs available to the Plaintiff, the ALJ determined that the Plaintiff retained the RFC to perform the demands of sedentary work, diminished by "significant nonexertional limitations which make it impossible for him to work in exposure to environmental pulmonary irritants...." Record at 20. The Plaintiff contends that the ALJ imposed an inappropriately restrictive standard by utilizing the word "concentrated" in the hypothetical posed to the ALJ.

In responding to Plaintiff's argument, the Magistrate Judge acknowledged that the ALJ improperly framed the question posed to the VE and therefore the VE's testimony was not accurate in its assessment of the number of jobs that the Plaintiff could perform. *See* Report and Recommendation at 19–20. However, the Magistrate Judge determined that nevertheless there would be a substantial num-

ber of jobs that the Plaintiff could perform, had the ALJ used a properly framed hypothetical question correctly. *Id.* In doing so, the Magistrate Judge cited cases that have held "there is no predetermined bench mark for determining 'significant' numbers." *Prentice v. Shalala,* No. C–93–445–L, 1994 WL 529917, at *8 (D.N.H. Sept.28, 1994); *Trimiar v. Sullivan,* 966 F.2d 1326, 1330 (10th Cir.1992). However, this Court holds that the ALJ and the Magistrate Judge determined that the Plaintiff could perform jobs in the regional and national economy, without evidence in the record to support their respective conclusions. The ALJ's finding is flawed because he framed the Plaintiff's limitation more narrowly than he should have, based upon the medical evidence in the record (using the word "concentrated" in the hypothetical) causing the VE to conclude the number of jobs the Plaintiff could perform was in the tens of thousands. The Magistrate Judge's holding was likewise flawed because, in his laudable effort to correct the ALJ's no doubt inadvertent slip of tongue, he concluded the number of jobs available which the Plaintiff could perform was "substantial" even though there was no evidence in the record upon which to base this conclusion. While this writer acknowledges the Plaintiff's RFC might not change based on the different standard, neither the ALJ nor the Court can make this determination absent evidentiary support in the record. *Rose v. Shalala,* 34 F.3d 13, 19 (1st Cir.1994) ("Because the ALJ's hypothetical assumed that fatigue did not pose a significant functional limitation for the claimant, and because the medical evidence did not permit that assumption, the ALJ could not rely on the vocational expert's response as a basis for finding claimant not disabled."); *Arocho v. Sec'y of Health and Human Servs.,* 670 F.2d 374, 375 (1st Cir.1982).

### B. *Elevation of the Plaintiff's Leg*

Plaintiff also contends that the Magistrate Judge improperly upheld the ALJ's decision to deny DIB relating to Plaintiff's leg injury. Plaintiff alleges that he needs to elevate his leg for significant periods of time each day, which prevents him from maintaining employment.

■ After reviewing the record and the Magistrate Judge's Report and Recommendation, this Court affirms the ALJ's decision denying DIB relating to Iafrate's leg injury. Despite Iafrate's arguments to the contrary, the Magistrate Judge did not engage in "improper post hoc rationalizations" in upholding the ALJ's decision. Instead, the Magistrate Judge reviewed the evidentiary record and determined that the ALJ's evaluation of Plaintiff's need to elevate his leg was not erroneous. *See* Report and Recommendation at 25. Thus, this Court holds that there is substantial evidence in the record to uphold the ALJ's decision relating to the Plaintiff's need to elevate his leg.

At oral argument and in post-hearing briefs submitted to the Court, the Plaintiff claims that the ALJ erred by failing to follow up on his request for further medical information from Plaintiff's counsel.[1] The record reveals that at the conclusion of the administrative hearing, the ALJ noted that further information relating to the Plaintiff's need to elevate his leg would be helpful.

ALJ: It would be usable [sic] for me to have a description from the claimant's physician of the degree to which he feels the claimant requires elevation of his leg.

ATTY: Your honor, I'll address that issue, Your Honor, And try to get an RFC and, maybe even a brief, very brief narrative in that regard.

ALJ: I think the narrative is going to be important in this case. A check off or anything like that is not going to tell me what I need to know, and it would be useful to me to know the extent to which his opinion is based on what he has observed in his, in his examination of the claimant. All right.

ATTY: Okay, Your Honor.

Record at 66–67. However, despite the ALJ's request for further information relating to the Plaintiff's leg injury, the Plaintiff's attorney failed to provide the ALJ with the requested information.

Plaintiff now claims that the ALJ had an affirmative obligation to obtain the information that was never provided by Plaintiff's counsel, and then erred when he failed to follow up on the request. This Court disagrees. While social security proceedings are not strictly adversarial, an ALJ does not have to embark upon an evidentiary scavenger hunt in order to obtain all medical evidence that might pertain to a case. *See Heggarty,* 947 F.2d at 997; *Rafael Rico v. Sec'y of Health, Education and Welfare,* 593 F.2d 431, 433 (1st Cir.1979) (holding that the Secretary has no duty to go to inordinate lengths to develop a claimant's case). In *Heggarty,* the First Circuit held that the Secretary's duty to develop the record increases in certain cases. *Id.*

We believe [the responsibility to develop the record] increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law

---

1. Plaintiff is currently represented by different counsel than at the administrative hear-ing.

judge, without undue effort, to see that the gaps are somewhat filled-as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness.

*Id.* (citing *Currier v. Sec'y of Health, Education and Welfare,* 612 F.2d 594, 598 (1st Cir.1980) (internal citations omitted)). In this case, Plaintiff was represented by counsel, who, for some unknown reason chose not to follow up on the ALJ's request for additional information. Thus, the ALJ did not have an affirmative duty to seek out evidence to fill the evidentiary gaps in the record. Furthermore, the evidence presented in the record does not reveal that the Plaintiff's claim was substantial. In fact, as the Magistrate Judge noted in his Report and Recommendation, "[n]one of the physicians who evaluated Plaintiff's leg injury recommended elevation of the leg at all, let alone to the extent Plaintiff claimed was necessary." Report and Recommendation at 25. The sole fact that Plaintiff's counsel failed to respond to the ALJ's request for information that might have been helpful, in and of itself, does not outweigh the substantial evidence in the Record indicating that the Plaintiff's leg injury does not mandate DIB.

*Conclusion*

For the reasons stated above, this Court remands the matter to the Social Security Administration for the limited purpose of taking further evidence with respect to the Plaintiff's residual functional capacity and specifically with respect to obtaining an answer to a correctly framed hypothetical question posed to the VE, and a revised finding by the ALJ in accordance therewith.

It is so ordered.